**In re the Marriage of Suzanne Weaver WEST, Petitioner, Respondent,**

v.

**Paul Richard WEST, Appellant.**

**No. C6-86-2185.**

Court of Appeals of Minnesota.

Aug. 11, 1987.

Review Denied Oct. 21, 1987.

Patrick W. Stewart, Stevens, Stewart & Egan, Burnsville, for respondent.

Daniel B. Ventres, Jr., Bruce Kruger, Gray, Plant, Mooty, Mooty & Bennett, Minneapolis, for appellant.

Heard, considered and decided by POPOVICH, C.J., and FOLEY and HUSPENI, JJ.

## OPINION

POPOVICH, Chief Judge.

Appellant Paul Richard West and respondent Suzanne Weaver West entered into a written marital termination agreement that was subsequently incorporated by the trial court into the dissolution decree. Following respondent's remarriage, appellant moved the court for modification of the judgment and decree to terminate spousal maintenance. The motion was denied, and this appeal followed. We reverse.

## FACTS

The parties were married in 1973, and in 1984 they decided to seek a dissolution of the marriage. They have no children. Appellant was not represented by counsel in the dissolution proceedings and signed a waiver of the right to counsel. Respondent's attorney prepared a written marital termination agreement based on provisions the parties had negotiated. The stipulation was incorporated into the January 31, 1985, dissolution decree. In part, the decree provides:

> *Spousal Maintenance.* The [appellant] shall pay to the [respondent] the sum of $600.00 per month as and for spousal maintenance. Said spousal maintenance shall begin on the first of the month following the date of closing on

the homestead and shall continue until the earlier of the following events occur:

a. Five years from the date of the sale of the homestead.

b. The death of [respondent].

[Appellant] shall maintain a policy of life insurance on his life naming [respondent] as beneficiary with said amount to be at least equal to the unpaid amount of spousal maintenance remaining from time to time with said beginning amount to be $36,000.00.

The parties agree that should [appellant's] net income (gross income less state and federal and FICA withholding) decrease by an amount in excess of twenty percent (20%) from its present level, the amount of spousal maintenance shall be renegotiated. However, said renegotiated amount shall not be less than twenty percent (20%) of [appellant's] net income (gross income less state, federal and FICA deductions). If the monthly payments are reduced, the total of $36,-000 to be paid shall remain the same and the number and term of payments shall be extended accordingly.

Appellant began making the maintenance payments on April 1, 1985. In June 1986, respondent remarried and appellant stopped making maintenance payments. Appellant then moved for modification of the decree to terminate maintenance because of respondent's remarriage. The trial court denied the motion.

### ISSUE

Did the trial court err in concluding respondent's remarriage did not terminate appellant's maintenance obligation?

### ANALYSIS

1. Minn.Stat. § 518.64, subd. 3 (1986) provides:

Unless otherwise agreed in writing or expressly provided in the decree, the obligation to pay future maintenance is terminated upon * * * the remarriage of the party receiving maintenance.

In applying this subdivision, the trial court found that the decree required appellant to pay a total amount of $36,000 in maintenance over a five-year period. The court further found that maintenance is to terminate only upon expiration of the five-year period or the death of respondent. Based on these findings, the trial court concluded that maintenance did not terminate on respondent's remarriage. However, there is no express provision in the decree regarding the impact of respondent's remarriage on the maintenance obligation.

■ The Minnesota Supreme Court has recently stated that Minn.Stat. § 518.64, subd. 3, requires an express statement in the decree that maintenance will continue beyond remarriage in order to avoid the presumption in the statute that maintenance terminates upon the recipient's remarriage. *Gunderson v. Gunderson*, 408 N.W.2d 852, 853 (Minn.1987). As in this case, the *Gunderson* decree provided that maintenance be paid for a specific length of time. This court agreed with the trial court in *Gunderson* that the decree obligated the appellant to make 42 monthly maintenance payments, thereby establishing maintenance in unconditional terms. The supreme court rejected this analysis and concluded that the absence of an express statement in the decree regarding continuation of maintenance following the recipient's remarriage is not remedied by evidence that the parties intended that maintenance continue unconditionally. *Id.* The supreme court held that the maintenance obligation terminated under section 518.64, subd. 3 upon the recipient's remarriage. Because the decree in this case does not expressly address the impact of remarriage on appellant's maintenance obligation, under the reasoning of *Gunderson* we must conclude that section 518.64, subd. 3 requires appellant's obligation terminate upon respondent's remarriage.

■ As the supreme court further observed in *Gunderson*, the statute allows maintenance to continue past remarriage if the parties have so agreed in writing. Respondent points to a series of letters exchanged between the parties during negotiation of the stipulation as writings that fulfill the statutory requirement. The letters, however, predate the written marital

termination agreement which was incorporated into the dissolution decree. Neither the stipulation nor the decree address the possibility of either party's remarriage. While the parties may have discussed this issue during negotiations, the stipulation does not reflect an agreement, and the letters cannot be relied upon to create an agreement different from that contained in the stipulation. *See Koch v. Han-Shire Investments, Inc.*, 273 Minn. 155, 166, 140 N.W.2d 55, 63 (1966). All previous negotiations must be considered merged in the written stipulation. We therefore cannot look behind the stipulation in order to consider letters exchanged by the parties during negotiations. Because the stipulation is silent regarding the maintenance obligation upon respondent's remarriage, Minn.Stat. § 518.64, subd. 3 controls to terminate the obligation.

■ 2. Respondent also asserts the maintenance obligation should be viewed as a property settlement, although described by the parties as maintenance, because appellant received more personal property at the time of the dissolution. However, the record does not indicate that values were attached to the property at the time of the dissolution. Rather, respondent submitted valuations when responding to appellant's motion to terminate maintenance. The trial court made no findings as to valuations when it observed in denying appellant's motion that the parties had apparently negotiated the maintenance provision "based upon the fact that [appellant] received more personal property at the time of the dissolution * * *." As a result, the court's conclusion is unsupported by findings. *See* Minn.R.Civ.P. 52.01. Furthermore, the decree provides that maintenance would terminate upon respondent's death. Such a provision would generally be inappropriate in a property settlement. Under the circumstances, we cannot conclude the parties in reality intended the maintenance payments to be part of a property settlement.

## DECISION

The trial court erred in concluding that appellant's maintenance obligation continued after respondent's remarriage.

Reversed.

HUSPENI, Judge (dissenting).

I believe the issue here has been the subject of too much litigation; litigation which has been both emotionally and economically costly to the parties involved. A review of *Burr v. Burr*, 353 N.W.2d 644 (Minn.Ct.App.1984), *Ruud v. Ruud*, 380 N.W.2d 765 (Minn.1986) and *Gunderson v. Gunderson*, 408 N.W.2d 852 (Minn.1987), leaves me with a firm conviction that if at the time a marriage is dissolved the parties agree that maintenance will survive obligee's subsequent remarriage, they should make certain that their stipulation says so in words that are not ambiguous and that those words are included in the decree itself.

Notwithstanding the ideal just expressed, I respectfully dissent and would affirm the trial court.

The *Gunderson* court observed that "Minn.Stat. § 518.64, subd. 3 also allows maintenance to continue past remarriage if the parties have so agreed in writing. Conceivably, a written stipulation could serve this purpose." *Gunderson* at 853. I believe that, unlike the situation in *Gunderson*, the stipulation here did meet the statutory requirement. The decree specifically provided that the sum of $36,000 be paid to respondent over a five year period. The obligation continues until expiration of that time period or the death of respondent. In addition, the decree requires that:

[Appellant] shall maintain a policy of life insurance on his life naming [respondent] as beneficiary with said amount to be at least equal to the unpaid amount of spousal maintenance remaining from time to time with said beginning amount to be $36,000.00.

Finally, the decree provided:

The parties agree that should [appellant's] net income (gross income less state and federal and FICA withholding) decrease by an amount in excess of twenty percent (20%) from its present level, the amount of spousal maintenance shall be renegotiated. However, said renegotiated amount shall not be less than

twenty percent (20%) of Respondent's then net income (gross income less state, federal, and FICA deductions). If the monthly payments are reduced, the total of $36,000 to be paid shall remain the same and the number and term of payments shall be extended accordingly.

These circumstances are qualitatively different from those present in *Gunderson.*

At most appellant's arguments to the trial court and on appeal raise only a question of ambiguity. Thus, it is proper to examine those writings which are critically enlightening here: the letters written by both parties to one another during their settlement negotiations. Respondent proposed in a letter dated November 6, 1984, that:

> Whether or not [respondent or appellant] ever remarry is irrelevant to the divorce settlement and any maintenance support payments agreed upon.

Appellant replied in a letter dated November 12, 1984:

> We differ on amounts for my take-home pay, the valuation of personal property, and your living expenses. With adjustments in these three areas, I believe we can agree on a more reasonable figure.

> \* \* \* \* \* \*

> Your proposal should be used as the basis for our property settlement. With the exception of the amount of maintenance support and the date of finalization of the divorce vs. selling of the house, I am in complete agreement with your proposal.

Minn.Stat. § 518.64, subd. 3, permits the court to look not only to the words of the dissolution decree but also to other written agreements regarding the impact of an obligee's remarriage on the maintenance obligation. In this case, I believe the letters constitute an agreement that maintenance would continue beyond respondent's remarriage. The statutory requirement, I submit, has been satisfied and the trial court should be affirmed.